IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| Shannon Williams, | § § § | |
| Plaintiff | § § | CIVIL ACTION NO. |
| | § § | |
| v. | § § | |
| | § § | |
| The City of Nacogdoches, Texas, | § | |
| its former police officer Josh Anders, and | § | |
| The Overlook at Nacogdoches (apartment | § | |
| Complex), | § § | |
| Defendants | § | JURY DEMANDED |
| | § | |

## COMPLAINT

Come now Plaintiff Shannon Williams who for her Complaint states as follows:

## I

### Preliminary Statement

1.      Plaintiff Shannon Williams, who was grabbed, dragged across a parking lot, thrown to the pavement, and pounced on by Defendant Anders, then a police officer, commences this action pursuant to 42 U.S.C. §1983 which provides in relevant part for redress for every person within the jurisdiction of the United States for the deprivation under color of state law of any rights, privileges, or immunities secured by the United States' Constitution and laws.

2.      Specifically, Defendants acts and omissions violated rights guaranteed to Plaintiffs by the Fourth Amendment to the United States Constitution made applicable to Defendants by the Fourteenth Amendment to the United States Constitution.

3.      Plaintiffs seek compensatory and punitive damages, and equitable relief, together with reasonable costs of litigation, including attorney fee as authorized by 42 U.S.C. §1988.

## II

## Jurisdiction

4.      Jurisdiction over Plaintiffs' constitutional claims against Defendants for which redress is provided by 42 U.S.C. § 1983 is conferred on this Court by 28 U.S.C. § 1343(a)(3).  Federal question jurisdiction is also conferred on this Court by 28 U.S.C. § 1331 because this action arises under the United States Constitution. This Court also has supplemental jurisdiction over pendant state law claims for assault under 28 U.S.C. § 1367.

## III

## Parties

## Plaintiffs

5.      Plaintiff Shannon Williams is a person and citizen within the jurisdiction of the United States, a resident of Texas and a former resident of City of Nacogdoches, Texas.

Defendants

6.      Defendant Josh Anders ("Anders") was a police officer in the City of Nacogdoches Police Department at times pertinent to this case, with a sworn duty to respect the Constitutional rights of citizens including their right not to be subject to unreasonable search or seizure.

7.      Defendant City of Nacogdoches ("City") is a municipality under the state law of Texas, including its operation of the Nacogdoches Police Department ("NPD") where Defendant Anders was employed as a police officer at times pertinent hereto. The City can be served through its Mayor, Ms. Shelly Brophy, at her place of business, Nacogdoches City Hall,

8.      Defendant Cardinal Street Housing, L.P. and/or its successors, predecessors and contractors ("Overlook Apartments"), AKA the Overlook at Nacogdoches. This Defendant owned and operated the apartment complex, located at 1602 Cardinal Street, Nacogdoches, TX 75961, where Defendant Anders assaulted Plaintiff Williams on or about April 4, 2019. Defendant Overlook Apartments employed Defendant Anders as an off-duty NPD officer to do police-type "security" work. Overlook Apartments can be served through its manager, Ms. Laura Morgan. at her place of business, the Overlook at Nacogdoches, 1602 Cardinal Street, Nacogdoches, TX 75961.

IV

Facts

Background

8.    Plaintiff Williams was a 20 years-old college student in Nacogdoches, Texas, on April 10, 2019.

9.    At that time Defendant City employed Defendant Anders as an NPD police officer and provided him with a police vehicle for his off-duty use. The City of Nacogdoches policy provides for its police department ("NPD") to regulate the off-duty employment of its police officers, including accepting requests from third parties seeking to hire off-duty officers to do police-related work, assigning officers to particular off-duty assignments, approving of the particular off-duty work, and setting conditions for off duty work including officer eligibility criteria, prohibitions against particular categories of off-duty work, setting scheduling limitations, and setting compensation for off-duty work assignments. The City subjects its officers doing off-duty work to NPD rules, regulations, directives, and procedures and procedures.

10. At times pertinent hereto, Overlook Apartments hired Defendant Anders to do police-related, off-duty, security work at the apartment complex. Anders was doing such work when he accosted Williams on or about April 10, 2019. Overlook Apartments working in concert with the Nacogdoches Police Department to provide security officers for the apartment

complex sufficiently cloaks the City with color of law to make them liable for the violations of Ms. Williams constitutional rights.

## What Happened

15.    Plaintiff Williams spent the early evening on April 10, 2019 at a sorority swimming gathering on campus at Stephen F. Austin State University. At a few about 9 p.m., when it was dark, she and some friends left the campus to go to one of the friend's apartment. After parking, they walked toward the apartment of Williams' friend. Williams and her friends, and most, if not all, of the other people walking in the same area, happened to be Black.

16. As they walked, talking to each other, it had been a pleasant spring evening until that point. Then, Williams noticed a white man - she later learned was Defendant Josh Anders, an off-duty police officer- ahead of them yelling angrily at everybody walking in the area, wanting to know why they were there. It was dark and appeared but he appeared to be wearing loud shorts and a t-shirt, and having some sort of a temper tantrum. Rather than walk nearer to him, Williams felt safer going back to the car and encouraged her friends to do so.

16.    As Williams neared the car, the angry man ran up to her from behind. She didn't know he was there it until he grabbed her arms from behind, yanking her back in the other direction. She was startled and pulled away. What had been an uncomfortable scene became pandemonium. Suddenly everybody else began screaming and yelling at Anders to get off of her. Anders got her in a headlock and continued to pull her back in the opposite direction she

had been walking. The people continued yelling and telling him to get off of her, but he wouldn't. Some of the people were trying to pull her away from him

17.    Anders put her on the pavement, with her face and head on a concrete curb. Anders held her down. Williams tried to keep her hands between her face and the curb. The yelling continued. Another man attempted to intercede, apparently trying to rescue Williams from the attack. Anders told the rescuer to "hold her," and abruptly got up. The crowd helped Williams get up, and she left with her friends as quickly as she could.

18.    At no time during these events did Anders advise Williams that he was a police officer. When Williams and her friends were safely away, somebody said they thought the attacker may have been a policeman.

18.    Due to Anders' actions, Williams was not free to leave, nor was she able to, once she noticed that Anders was angrily yelling.

18.    During the commotion caused by Defendant Anders, he called the NPD and requested "additional units," suggesting that he considered himself to be acting as the initial NPD unit at the scene.

19.    Anders' treatment of Williams had been a frightening experience, during which Williams felt helpless and did not know how it would end. Anders' attack caused Williams physical soreness aches and pains, but also depression, anxiety, lost sleep, loss of attention and ability to focus, crying spells, and interfered with her relationships with people close to her.

20.    There was no legal or practical justification for Anders' treatment of Williams, and his use of force against her. Given that

21.    Defendant Anders' actions describe were intentional, knowing, and in reckless disregard of Plaintiff Williams' rights.

22.    Defendant Anders' knew, or should have known, that his contact with, and treatment of, Williams would be offensive and provocative to her, and foreseeably cause her to suffer fright, indignity, offense, physical and mental pain and suffering, and threat of imminent bodily injury even greater than that she suffered.

23.    The Defendant City and NPD have a history of tolerating race discrimination by their police officers and police department. It is Plaintiff's information and belief that the City's complicity in race discrimination is a cause of Anders' attack on Williams.

24.    For instance, City's annually reported racial profiling statistics reflect that its officers are consistently more than three times as likely to search non-white citizens as white citizens. The City is aware of this disparity and has done nothing to determine and correct its causes or to provide any explanation for the disparities other than racial discrimination.

25.    Also, while the City typically hires only one, or a few, Black African-American officers, it is well below the number of Black officers that would be expected based on the racial composition of the City's population.

26.    The NPD is generally known to have problems getting along with the Black citizens of Nacogdoches.

27    The City's virtually complete control of Ander's off-duty work, and its failure to properly regulate his use of force and other police powers during this off-duty work, make the City's policies and customs a driving force behind his violations of Williams' rights.

**Damages**

28.    Defendants' acts and omissions set out above are a proximate cause of substantial damages to Plaintiff Williams' including loss of freedom, physical pain and suffering, terror, grief, mental anguish, humiliation, indignity and embarrassment.

29.    All of the acts and omissions of Defendants Anders and Overlook Apartments were wanton, malicious, reckless, and done in conscious disregard of and with deliberate indifference to the rights of Plaintiff Williams, making appropriate awards of punitive damages against these non-public Defendants.

V

**CAUSES OF ACTION**

**First and Second Causes of Action**

30.    Defendant Anders' treatment of Plaintiff Williams, described above, constitute violations of her Fourteenth Amendment rights to not be subject to unreasonable seizure, made actionable by  42 U.S.C. §1983.  There was (1) no legal justification for the seizure and (2) the use of force during the seizure was excessive, making it unreasonable for both reasons.

31.    All Defendants are liable under §1983 because all are cloaked with color of state law under the circumstances of this case.

32.     All Defendants are liable to Plaintiffs for compensatory damages and statutory attorney fees as authorized by 42 U.S.C. §1988.  In addition, Defendants Anders, in his individual capacity, and Overlook Apartments are not public entities, so are liable to Plaintiff Williams for punitive damages.

### Third Cause of Action

33. Defendants Anders and the Overlook Apartments are also liable for assault for both physical injury and threat of bodily injury under the laws of the State of Texas, for which Plaintiff seeks both compensatory and punitive damages.

### VI

### Jury Demand

39.     Plaintiffs demand a trial by jury on all issues so triable.

WHEREFORE, PLAINTIFF PRAY that this Honorable Court:

a.      Enter judgment in behalf of Plaintiff Williams against all Defendants, jointly and severally, for compensatory damages in an amount sufficient to fully and completely compensate Plaintiff for her actual damages proximately caused by the defendants;

b.      Enter judgment in behalf of Plaintiff Williams against individual Defendant Anders and Defendant Overlook Apartments, separately, for punitive damages, in an amount sufficient to punish each Defendant for his misconduct in the case at bar and in an amount sufficient to deter each Defendant and others from doing the same thing to someone else;

e.      Grant Plaintiff Williams a reasonable attorney fee as authorized by 42 U.S.C. §1988;

f.      Grant Plaintiff Williams a trial by jury on all issues so triable; and

g.      Grant Plaintiff Williams any and all additional relief for which she is entitled including the maximum amounts of pre-judgment interest, post-judgment interest and their costs herein expended.

Respectfully submitted,

MOORE & ASSOCIATES

By: _____
Melissa Moore
State Bar No. 24013189
Curt Hesse
State Bar No. 24065414
Lyric Center
440 Louisiana Street, Suite 675
Houston, Texas 77002
Telephone: (713) 222-6775
Facsimile: (713) 222-6739