IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

SHANNON WILLIAMS,

      Plaintiff,

v.

THE CITY OF NACOGDOCHES, TEXAS,
ITS FORMER POLICE OFFICER JOSH
ANDERSON, and THE OVERLOOK AT
NACOGDOCHES, APARTMENT
COMPLEX,

      Defendants.

No. 9:21-CV-00071-MJT-ZJH

## REPORT AND RECOMMENDATION GRANTING IN PART AND DENYING IN PART DEFENDANT CARDINAL STREET HOUSING, L.P.'S MOTION TO DISMISS

This case is assigned to the Honorable Michael J. Truncale, United States District Judge, and is referred to the undersigned United States Magistrate Judge for all pretrial matters. Doc. No. 102. On April 9, 2021, Plaintiff Shannon Williams, then through counsel, filed this lawsuit against Defendants the City of Nacogdoches, Texas ("the City"), Nacogdoches police officer Josh Anders, and Cardinal Street Housing, L.P. a/k/a "The Overlook at Nacogdoches" ("Overlook Apartments") (collectively, "Defendants"), pursuant to 42 U.S.C. § 1983, for the alleged unlawful assault, detention, and arrest of Williams in violation of her Fourth and Fourteenth Amendment rights. Pending is Defendant The Overlook Apartments' *Fourth Rule 12(b)(6) Motion to Dismiss Plaintiff's Third Amended Corrected Complaint* ("Fourth Motion to Dismiss" or "Motion") (Doc. No. 121).

As against the Overlook Apartments alone, Williams has alleged causes of action under 42 U.S.C. § 1983, theories of negligent hiring, supervision, training, and retention of Anders, and vicarious liability for Defendant Josh Anders' assault of Williams. Doc. No. 44 at 18–19, ¶¶ 60,

62.  First, the undersigned recommends that Williams cannot plausibly state a claim under Section 1983 because the Overlook Apartments is not a state actor.  Second, the court recommends that Williams' negligence theories must fail because she has failed to plead facts giving rise to such claims, such that her operative complaint merely recites conclusory and general allegations, and fails to adequately plead necessary elements to succeed on her negligence claims.  Lastly, however, the court recommends denying the Overlook Apartments' motion regarding Williams' vicarious liability theory because at this juncture, based on the pleadings, the court determines that Officer Anders acted in his private capacity as an off-duty officer, such that the Overlook Apartments may be vicariously liable for his assault of Williams.  In total, the undersigned recommends granting in part and denying in part Defendant Cardinal Street Housing, L.P. a/k/a The Overlook Apartments' *Fourth Motion to Dismiss* (Doc. No. 121).

## I.    Background[1]

On April 9, 2021, Plaintiff Shannon Williams, then proceeding through legal counsel, filed this instant civil rights case alleging all three Defendants were liable under 42 U.S.C. § 1983 for violating her Fourth and Fourteenth Amendment rights during Officer Anders' alleged assault of Williams in the Overlook Apartments parking lot in April 2019.  *See generally* Doc. No. 44.

As relevant to the Overlook Apartments, Williams alleges that the Overlook Apartments "hired Defendant Anders to do police-related, off-duty, security work at the apartment complex, including his exercise of state[-]granted authority typically reserved to police officers." *Id.* at 5–6, ¶ 21.  Williams continues that the Overlook Apartments conferred Anders with "unfettered discretion to exercise physical force and other police powers without reasonably effective

---

[1] For a full recitation of the facts and procedural history, *see* the undersigned's previous *Report and Recommendation* (Doc. No. 110).

supervision, training, or hiring practices." *Id.* at 6.  Further, Williams alleges that the Overlook Apartments "took no reasonable action to limit the exercise of police powers by Anders. [It] knew that this situation created a risk of harm to its residents and their guests, but did nothing to mitigate the risk." *Id.*  Lastly, Williams alleges that Anders' use of force against her was "within his scope of his employment" while working for the Overlook Apartments. *Id.* at 17, ¶ 51.

On April 9, 2021, Plaintiff Williams, proceeding through legal counsel, filed her initial *Complaint* against the City, the Overlook Apartments, and Anders, alleging that the Overlook Apartments was liable under 42 U.S.C. § 1983 and under common law theories of assault and threat of bodily injury.  Doc. No. 1 at 9, ¶¶ 32–33.  On July 6, 2021, the Overlook Apartments filed its first *Rule 12(b)(6) Motion to Dismiss* ("First Motion to Dismiss") (Doc. No. 9). On July 20, 2021, Williams filed an *Amended Complaint* (Doc. No. 14) and her *Response in Opposition to the Overlook Apartments' First Motion to Dismiss*.  Doc. No. 15.  On July 22, 2021, Judge Truncale denied as moot the Overlook Apartments' *First Motion to Dismiss* thereafter.  Doc No. 16.

On August 18, 2021, Williams filed her *Second Amended Complaint*.  Doc. No. 26.  On August 24, 2021, the Overlook Apartments filed its second *Rule 12(b)(6) Motion to Dismiss* ("Second Motion to Dismiss") (Doc. No. 32).  On September 8, 2021, Williams filed her *Agreed Motion Regarding Plaintiff's Anticipated Third Amended Complaint* (Doc. No. 38), whereby the defendants agreed to withdraw their pending motions to dismiss in anticipation of Williams' anticipated third amended complaint.  On September 10, 2021, Judge Truncale granted Williams' agreed motion, and denied the Overlook Apartments' *Second Motion to Dismiss* as moot.  Doc. No. 40.  On October 18, 2021, Williams filed her operative *Corrected Third Amended Complaint*. Doc. No. 44.  On November 1, 2021, the Overlook Apartments filed its third *Rule 12(b)(6) Motion*

*to Dismiss* ("Third Motion to Dismiss") (Doc. No. 50), which the parties fully briefed thereafter. *See* Doc. Nos. 59, 70, 73.

On April 7, 2022, Williams' legal counsel filed an *Unopposed Motion to Withdraw* from representing Williams.  Doc. No. 80.  On May 18, 2022, the court held an *in camera* status conference before Judge Truncale regarding plaintiff counsel's *Unopposed Motion to Withdraw*. At that conference, the court determined that Williams should have a period of 120 days to retain new counsel, and the Overlook Apartments agreed to withdraw its *Second Motion to Dismiss*.  Doc. No. 91.  On May 20, 2022, the court granted plaintiff counsel's *Unopposed Motion to Withdraw*, and denied the Overlook Apartments' *Third Motion to Dismiss* as moot.  *Id.*  On October 25, 2022, Williams filed a *Notice to the Court Regarding Representation* (Doc. No. 99), stating that she will proceed with this litigation as a *pro se* litigant while she continues to search for new representation. Doc. No. 99.

On January 31, 2023, the Overlook Apartments filed the instant *Fourth Motion to Dismiss*. Doc. No. 121.  On February 23, 2023, Williams filed her *Second Reply and Brief to Defendant[s'] Motions to Dismiss* ("Response").  Doc. No. 123.  The court will now turn to the merits of the Overlook Apartments' instant motion to dismiss.

## II.    Legal Standard

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).

To survive a Rule 12(b)(6) motion to dismiss under *Twombly* and *Iqbal*, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). The plaintiff's complaint "does not need detailed factual allegations," but her complaint "must raise a right to relief above the speculative level," providing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *Stringer v. Remington Arms Co., L.L.C.*, 52 F.4th 660, 661 (5th Cir. 2022) (citations omitted).

When assessing a motion to dismiss under this Rule, the court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). However, courts must "identify and disregard conclusory allegations because they are 'not entitled to the assumption of truth.'" *Lamar Cnty. Elec. Coop. Ass'n v. McInnis Bros. Constr., Inc.*, No. 4:20-CV-930, 2021 WL 1061188, at *4 (E.D. Tex. Mar. 19, 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (internal citation omitted).

## III.    Discussion

In her *Corrected Third Amended Complaint*, Williams alleges that "[a]ll defendants are liable under § 1983 because all are cloaked with color of state law under the circumstances of this case." Doc. No. 44 at 19, ¶ 60. Against the Overlook Apartments alone, Williams alleges that it is "vicariously liable for Defendant Anders' assault on Plaintiff Williams," and further alleges causes of action for the Overlook Apartments' "negligent hiring, supervision, ret[ention] and/or training of Anders," and that Anders "was within[] the course and scope of his employment [ ] because Defendant [Overlook Apartments] authorized Anders to exercise his state[-]granted police

powers." *Id.*, ¶ 62 (alterations added). The court will address each allegation in turn, in no particular order.

### A. 42 U.S.C. § 1983

To begin, Williams has alleged a cause of action under 42 U.S.C. § 1983 against all defendants in this case. Doc. No. 44 at 19, ¶ 60. The Overlook Apartments moves to dismiss this claim against it because as a private entity, it is not a state actor, and cannot be subject to the purview of section 1983. *See* Doc. No. 121 at 5–6 ("The question in this case is whether the actions of Cardinal could be considered the actions of the State for the purposes of liability under 42 U.S.C. § 1983. Defendant submits that the answer is no."), 8 ("Williams' complaint ultimately fails because Cardinal is no state actor."). The court agrees with the Overlook Apartments regarding this allegation.

Title 42 U.S.C. Section 1983 provides in pertinent part:

> Every person who, *under color of any statute, ordinance, regulation, custom, or usage, of any State* . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983 (emphasis added).

The necessary part of section 1983 liability, therefore, requires that the defendant be a state actor who acts under color of state law. *See id.*; *Sanchez v. Oliver*, 995 F.3d 461, 466 (5th Cir. 2021) ("To state a claim under § 1983, a plaintiff . . . must show that the alleged deprivation was committed by a person acting under color of state law."); *cf. Williams v. Dillard's Dep't Stores, Inc.*, 211 F. App'x 327, 329 (5th Cir. 2006) (citing *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 747 (5th Cir. 2001)) ("Dillard's was not a state actor, a requirement of § 1983 claims."). "Private individuals generally are not considered to act under color of law, *i.e.*, are not considered

state actors, and 'private misuse of a state statute does not describe conduct that can be attributed to the State.'" *Ballard v. Wall*, 413 F.3d 510, 518 (5th Cir. 2005) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982)).

However, the actions of a private individual may be attributable to the state when there exists "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Brentwood Acad. v. Tenn. Secondary Athletic Ass'n*, 531 U.S. 288, 295 (2001) (citation and internal quotation marks omitted). In the case of a merchant that has employed an off-duty police officer to act as a private security guard, this "close nexus" test is satisfied when "an officer has failed to perform an independent investigation" and the merchant "is involved in a conspiracy or participates in joint activity with state actors." *Morris*, 277 F.3d at 750; *Ballard*, 413 F.3d at 518 (citation omitted).

Turning to the operative complaint, even if the court agrees that Officer Anders failed to perform an independent investigation prior to his use of excessive force against Williams, Williams has failed to plead or adequately allege that the Overlook Apartments has a "close nexus" to the state, such that it has acted under color of state law. *See* Doc. No. 44 at 5–6; *Brentwood Acad.*, 531 U.S. at 295; *Williams*, 211 F. App'x at 329; *Morris*, 277 F.3d at 750; *Ballard*, 413 F.3d at 518.

Instead, Williams has merely alleged general and conclusory allegations that the Overlook Apartments "work[ed] in concert with the Defendant City of Nacogdoches to provide security officers for the apartment complex," which "sufficiently cloaked both [the Outlook Apartments] and the City with color of law to make them liable for the violations of Plaintiff Williams' constitutional rights complained of herein." Doc. No. 44 at 6, ¶ 23. This conclusory allegation cannot satisfy *Twombly* and *Iqbal*'s pleading standards, and fails to plausibly plead facts giving

7

rise to a close nexus between the Overlook Apartments and the State of Texas. *Iqbal*, 556 U.S. at 664 (courts must identify and disregard conclusory allegations because they "are not entitled to the assumption of truth."), 678 (internal citation omitted) ( "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see also Williams v. Candletree Apartments*, 38 F. Supp. 3d 801, 804 (N.D. Tex. 2014) (citation omitted) ("Here, the defendants are private apartment complexes. No facts are alleged in the complaint as that would cause the court to consider that either defendant was a state actor or was engaged in conduct that could in any way be attributed to the state. For example, there is no allegation that any of the owners or employees are state officials, or that any state officials are involved in either defendants' daily operations.").

Not only has Williams failed to satisfy *Iqbal* and *Twombly*'s pleading standards, but moreover, the court cannot consider mere employment of an off-duty police officer as satisfying the close nexus test. Here, the court points Williams to *L.T. ex rel. Hollins v. City of Jackson* from the Southern District of Mississippi. 145 F. Supp. 2d 750 (S.D. Miss. 2000). There, the court discussed:

> For the purposes of the nexus test, the state must be significantly involved in or actively participate in the alleged conduct—in this case, sexual battery. The actions complained of by L.T.—employing a Jackson police officer to police the apartment complex, making his employment with the complex dependant [sic] on his continued employment with the Jackson Police Department, allowing Collins to place a JPD decal on his apartment door, etc.—do not constitute a sufficient nexus for state action. *See Beanal v. Freeport-McMoRan, Inc.*, 969 F. Supp. 362, 376–77 (E.D. La. 1997) ("[g]overnmental regulation, subsidy, approval or acquiescence in the private conduct does not make the state responsible for the conduct.")[.] *Simply because Westwood employed a Jackson police officer as a security guard does not transform it into a state actor.*

*Id.* at 761–62 (emphasis added).

Thus, for the same reasons articulated by the *L.T. ex rel. Hollins* Court, and because Williams failed to plead facts giving rise to a "close nexus" between the Outlook Apartments and the State, the undersigned concludes that the Outlook Apartments did not act under color of state law in the actions underlying the present case. Accordingly, the undersigned recommends granting the Overlook Apartments' *Fourth Motion to Dismiss* (Doc. No. 121) as it relates to Williams' cause of action under 42 U.S.C. § 1983. The undersigned will next turn to Williams' several negligence theories of liability against the Overlook Apartments.

B. <u>Negligent Hiring, Supervision, Retention, and Training</u>

Moving along, Williams' operative complaint also alleges several theories of negligence against the Overlook Apartments. Doc. No. 44 at 19, ¶ 62. Specifically, Williams brings causes of action against the Overlook Apartments for its "negligent hiring, supervision, ret[ention] and/or training of [Officer] Anders," alleging that his assault of Williams was "within[] the course and scope of his employment." *Id.* (alterations added). Earlier in her complaint, Williams maintains that the Overlook Apartments employed Officer Anders, and conferred him with "unfettered discretion to exercise physical force and other police powers without reasonably effective supervision, training, or hiring practices," that the Overlook Apartments "took no reasonable action to limit the exercise of police powers by Anders," and that it "knew that this situation created a risk of harm to its residents and their guests, but did nothing to mitigate that risk." *Id.* at 6, ¶ 21.

More to the point, Williams states that the Overlook Apartments "owed the public a duty to hire, supervise, train, and retain only competent employees to exercise state-granted police authority in order to provide security at its Overlook Apartment complex. Defendant Cardinal Street Housing, L.P. failed to do so." *Id.*, ¶ 22.

In its motion to dismiss, the Overlook Apartments states, in relevant part, that:

> Plaintiff alleges no facts supporting an inference that the Defendant knew or had reason to know that Anders was unfit to perform any job, facts obliging defendant to properly supervise, or that Anders was not adequately trained.  In other words, the Plaintiff's attempt to state a claim for negligent hiring, supervision, retention and training amounts to no more than 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'

Doc. No. 121 at 14 (citing *Iqbal*, 556 U.S. at 678) (footnote omitted).

The court agrees with the Overlook Apartments and recommends granting its motion to dismiss Williams' claims sounding in negligence as well.

The Texas Supreme Court has "'not ruled definitively on the existence, elements, and scope of [torts such as negligent retention and supervision of an employee by an employer] and related torts such as negligent training and hiring.'"  *Pagayon v. Exxon Mobil Corp.*, 536 S.W.3d 499, 505 (Tex. 2017) (alteration in original) (quoting *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 804 n.27 (Tex. 2010)).  However, "[a]n employer can be liable for negligence if its failure to use due care in [training,] hiring, supervising, or retaining an employee creates an unreasonable risk of harm to others."  *Clark v. PFPP Ltd. P'ship*, 455 S.W.3d 283, 287 (Tex. App.—Dallas 2015, no pet.) (citing *Lermon v. Minyard Food Stores, Inc.*, No. 05-13-00034-CV, 2014 WL 6466840, at *8 (Tex. App.—Dallas Nov. 19, 2014)).  To recover under theories of negligent hiring, training, supervision, and retention, "a plaintiff must show more than just negligent hiring practices . . . [she] must also show she suffer[ed] some damages from the foreseeable misconduct of an employee who was hired, supervised, or retained pursuant to the defendant's negligent practices."  *Id.* (citation and internal quotation marks omitted) (first alteration added, second alteration in original).

More specifically, to establish a negligent hiring or retention claim, a plaintiff must show that an employer's "failure to investigate, screen, or supervise its [employees] proximately caused the injuries the plaintiff[] allege[s]."  *Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 796 (Tex. 2006)

(internal quotation marks and citation omitted) (alterations added).  For a negligent hiring or retention claim to succeed, a plaintiff must demonstrate there is "[some]thing in the employee's background that would cause a reasonable employer not to hire or retain the employee," otherwise, the employer is not negligent.  *Dangerfield v. Ormsby*, 264 S.W.3d 904, 912 (Tex. App.—Fort Worth 2008, no pet.) (citations omitted) (alteration added).

"To establish a claim for negligent training, a plaintiff must prove that a reasonably prudent employer would have provided training beyond that which was given and that failure to do so caused his injuries."  *Id.* (footnote and citation omitted).  Finally, "[t]o establish a claim for negligent supervision, a plaintiff must show that an employer's failure to supervise its employees caused his injuries."  *Id.*

Turning to the operative complaint, Williams' negligence claims fail for several reasons.  First, Williams' *Corrected Third Amended Complaint* only pleads general and conclusory allegations that the Overlook Apartments "took no reasonable action to limit" Officer Anders' exercise of police powers, and that they knew by taking no action, it "created a risk of harm to its residents and their guests."  Doc. No. 44 at 6, ¶ 21.  Then, Williams states that the Overlook Apartments "owed the public a duty to hire, supervise, train, and retain only competent employees to exercise state-granted police authority," but "failed to do so."  *Id.*, ¶ 22.  These are the exact type of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [that] do not suffice."  *Iqbal*, 556 U.S. at 678 (internal citation omitted) (alteration added); *Dangerfield*, 264 S.W.3d at 912 (citation omitted) ("[A]n employer is liable for negligent hiring, retention, or supervision if it hires an incompetent or unfit employee whom it knows, or by the exercise of reasonable care should have known, was incompetent or unfit, thereby creating an unreasonable risk of harm to others."); *cf. Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023) (citation

and internal quotation marks omitted) ("Conclusory allegations, unwarranted factual inferences, or legal conclusions are not accepted as true.").

Moreover, even if the court agreed that Williams had plausibly pleaded enough to satisfy showing that the Overlook Apartments had a duty to its guests, and that it breached this duty in its hiring, retention, training, and supervision of Anders, Williams has failed to plead any facts giving rise to the causation element for each negligence theory. *See Dangerfield*, 264 S.W.3d at 912 (citation omitted) ("An employer owes a duty to the general public to ascertain the qualifications and competence of the employees it hires, especially when the employees are engaged in occupations that require skill or experience and that could be hazardous to the safety of others."); *cf. Fifth Club*, 196 S.W.3d at 796 (requiring plaintiff show defendant's breach of duty was the proximate cause to her injury suffered in a negligent hiring and retention claim); *Dangerfield*, 264 S.W.3d at 912 (requiring causation element to establish a claim for negligent training and supervision).

For example, a negligent hiring claim requires the plaintiff show that there was "[some]thing in the employee's background that would cause a reasonable employer not to hire or retain" them. *Dangerfield*, 264 S.W.3d at 912 (alteration added). Williams failed to plead any facts pertaining to Officer Anders' background that would cause a reasonable employer not to hire him, and similarly, failed to plead any facts showing that the Overlook's hiring, retention, training, and supervision of Anders was the proximate or direct cause of Williams' injuries. *See generally* Doc. No. 44. These deficiencies are fatal to her claims. Indeed, the only mention of causation appears when Williams briefly states that Anders' assault on Williams was "foreseeably caused by [the Overlook Apartments'] negligent hiring, supervision, ret[ention] and/or training of

Anders." *Id.* at 19, ¶ 62 (alterations added).  This conclusory and general mention of foreseeability, however, cannot suffice.  *Iqbal*, 556 U.S. at 678; *Allen*, 65 F.4th at 743.

For these reasons, the undersigned similarly recommends granting the Overlook Apartments' *Fourth Motion to Dismiss* (Doc. No. 121) regarding Williams' negligent hiring, retention, training, and supervision claims as well.  The court will next address Williams' vicarious liability claim.

### C.  Vicarious Liability for Assault Claim

Lastly, Williams alleges that the Overlook Apartments is "vicariously liable for Defendant Anders' assault of Plaintiff Williams," which was "within[] the course and scope of [Anders'] employment."  Doc. No. 44 at 19, ¶ 62 (alterations added).  In its motion, the Overlook Apartments moves to dismiss this allegation, contending that because Officer Anders was off-duty, dressed in personal, civilian clothing, he "was actively in furtherance of his own personal business as an apartment resident when the interaction with Plaintiff began," and was thus acting outside the scope of his employment during the assault.  Doc. No. 121 at 9–10.[2]  Moreover, the Overlook Apartments continues, once Anders initiated his assault of Williams, he became an on-duty police officer for the City of Nacogdoches, and *not* an employee of the Overlook Apartments:

> Put simply, an off-duty police officer acting as a security guard who believes he observes a crime being committed immediately becomes an on-duty police officer and remains so as he discharges his authority granted to him as a police officer.

> 22.    The facts as alleged in Plaintiff's most recent complaint[] taken as true, establish that Defendant Anders was no longer an employee of Cardinal at the time of the incident made the basis of the lawsuit, but instead, [that] he was working in his capacity as a Nacogdoches Police Officer.[]

---

[2] The Overlook Apartments also moves to dismiss allegations stemming from Williams' original *Complaint* (Doc. No. 1) and *Second Amended Complaint* (Doc. No. 26), whereby Williams alleged the Overlook Apartments was directly liable for Anders' assault of Williams.  Doc. No. 121 at 8–9 n.30 (citing original *Complaint* (Doc. No. 1)), 31 (citing *Second Amended Complaint* (Doc. No. 26)).  As these were not restated in her operative, *Corrected Third Amended Complaint* (Doc. No. 44), the undersigned will not consider this discussion in resolving the Overlook Apartments' instant *Fourth Motion to Dismiss*.  Doc. No. 121 at 8–9.

Doc. No. 121 at 12–13, ¶¶ 21–22 (footnotes and citations omitted).

Here, the court disagrees with the Overlook Apartments and recommends denying its *Fourth Motion to Dismiss* (Doc. No. 121) based on Williams' vicarious liability claim.

"Generally, a master is vicariously liable for the torts of its servants committed in the course and scope of their employment." *GTW Sw., Inc. v. Bruce*, 998 S.W.2d 605, 617 (Tex. 1999) (citations omitted). "This is true even though the employee's tort is intentional when the act, although not specifically authorized by the employer, is closely connected with the servant's authorized duties." *Id.* at 617–18 (citations omitted). The test, then, for when an employer is vicariously liable for its employee's tort(s), is whether the intentional tort is "committed in the accomplishment of a duty entrusted to the employee, rather than because of personal animosity." *Id.* (citation omitted).

Regarding vicarious liability of a police officer, the analysis alters a bit. In these situations, the court must first ask "in what capacity was the officer acting at the time he committed the acts for which the complaint is made?" *Mansfield v. C.F. Bent Tree Apartment Ltd. P'ship*, 37 S.W.3d 145, 150 (Tex. App.—Austin 2001, no pet.) (internal quotation marks omitted) (collecting cases). "In Texas, an off-duty police officer is treated as an on-duty police officer for vicarious liability purposes when the officer observes a crime, reasonably suspects that an individual committed a crime, or detains an arrested person until the individual can be transported to a police station." *Huynh v. Walmart Inc.*, 30 F.4th 448, 454 (5th Cir. 2022) (citations omitted). "To determine if an off-duty police officer was acting in an official capacity or an employee of a private employer, courts analyze the capacity in which the officer acted at the time he committed the acts for which the complaint is made." *Id.* (citation and internal quotation marks omitted).

This "capacity" test asks whether the officer was "(1) enforcing the general laws," making him an on-duty officer, or "(2) protecting the employer's property, ejecting trespassers, or enforcing rules and regulations promulgated by the employer," making him a private employee. *Id.* at 454–55 (citation and internal quotation marks omitted); *Mansfield*, 37 S.W.3d at 150 (citation omitted) ("If the officer is performing a public duty, such as the enforcement of general laws, the officer's private employer incurs no vicarious liability for the officer's acts, even though the employer may have directed the activities."); *see also Williams*, 211 F. App'x at 329 ("Because Officer Riley acted in her public capacity, Dillard's is not vicariously liable for her actions").

In some instances, the "capacity" test is not always clear, and the court may not easily discern whether an officer acted according to his public or private duties. In these situations, the court must look to persuasive indicia. *See, e.g.*, *Mansfield*, 37 S.W.3d at 150 (holding officer was performing his public duty because he "identified himself and showed his badge to Mansfield prior to arresting him," Mansfield "expected to be arrested if discovered by a police officer," and Field was "detaining Mansfield until he could be removed to the police station."); *see also Cox v. City of Ft. Worth, Tex.*, 762 F. Supp. 2d 926, 939–40 (N.D. Tex. 2010) (holding officer acted in public capacity, in part, because he "was wearing his Forth Worth police officer's uniform.").

For example, the Fifth Circuit looked to three central factors in *Williams* to discern the capacity of the officer, analyzing, in relevant part:

> [T]here are multiple bases for concluding that Officer Riley was acting in her public capacity as a Beaumont police officer that do not involve the question of whether Williams was committing disorderly conduct. First, Williams knew Officer Riley was a police officer because when Riley arrested him, she was wearing a uniform and badge. . . . Second, Riley was investigating allegations that Williams was shoplifting. . . . Third, Officer Riley arrested Williams after learning that he had an outstanding warrant. . . . These factors establish that Officer Riley was acting in her public capacity and that Dillard's is not vicariously liable for her actions.

*Williams*, 211 F. App'x at 330 (citations omitted); *see also Goins v. City of Hous.*, No. H-20-1553, 2021 WL 2785344, at *4 (S.D. Tex. June 8, 2021) ("Because LaRue acted pursuant to a reasonable suspicion that Goins was engaged in criminal activity, and there are no allegations that Goins was protecting Sam's property . . . Goins' allegations do not state a plausible vicarious liability claim against Sam for false imprisonment."), *R. & R. adopted*, No. 4:20-CV-1553, 2021 WL 2779312 (S.D. Tex. July 2, 2021); *Yadav v. Frost Bank*, SA-20-CV-00005-FB-ESC, 2020 WL 7385842, at *4 (W.D. Tex. Dec. 16, 2020) (holding officer was acting in public capacity when he arrested the plaintiff for criminal trespass of a private bank), *R. & R. adopted*, SA-20-CV-00005-FB-ESC, ECF No. 60 (Order Adopting Report & Recommendation), *aff'd* 851 F. App'x 509 (5th Cir. June 29, 2021).

The Overlook Apartments points to allegations in Williams' complaint that state that Officer Anders was exercising his police powers, and in addition, because she alleges that he drove in a "fully lit police car," the Overlook Apartments urges the court to presume Anders engaged his emergency lights on his police vehicle, thereby providing indicia that he acted as an on-duty police officer. Def.'s Mot., Doc. No. 121 at 13; Third Am. Compl., Doc. No. 44 at 5, 8, ¶¶ 21 ("Defendant Cardinal Street Housing, L.P. hired Defendant Anders to do police-related, off-duty, security work at the apartment complex, including his exercise of state[-]granted authority typically reserved to police officers."), 31 ("After a few seconds, . . . a fully lit police car pulled up out of the dark. Its lights prevented Williams from seeing who was driving it.").

In resolving a motion to dismiss, however, the court has a duty to accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Allen*, 65 F.4th at 743 (citation and internal quotation marks omitted) ("At this stage, we accept all well-pled facts as true, construing all reasonable inferences in the complaint in the light most favorable to the

plaintiff.").  In her operative complaint, Williams states that Officer Anders was an "off-duty police officer" on no less than eighteen (18) separate occasions.  *See* Doc. No. 44 at 1, 3–5, 16–17, ¶¶ 1, 3, 12–21, 40–41, 54–55.  Importantly, Williams states in her complaint that "Mr. Anders *later* documented that he was an off-duty police officer who had been attempting to *arrest* Williams for allegedly evading arrest," that "[t]here was no reason for Anders to peacefully arrest Williams, and certainly no justification for his sudden use of force," and that "Anders had not tried to calmly and clearly identify himself as a police officer to Ms. Wiliams, or otherwise explain himself."  *Id.* at 41 (first emphasis added, second emphasis in original), 42, 44.

Thus, while the court will not accept Williams' legal conclusion that Anders' "actions were within his scope of his employment," the aforementioned representations, when taken as true and when drawing all reasonable inferences in her favor, indicate that Williams adequately pleaded Anders was acting in an off-duty capacity.  *See supra*; *Allen*, 65 F.4th at 743 (citation and internal quotation marks omitted) ("Conclusory allegations, unwarranted factual inferences, or legal conclusions are not accepted as true.").  Because the court cannot draw assumptions outside of the pleadings at this stage, the court cannot rely on the Fifth Circuit's enunciated "capacity" test at this juncture.

Instead, at this stage of the proceedings, the court will draw upon persuasive law and indicia in determining that in addition to her pleading, Williams stated enough facts to suggest that Officer Anders acted in his off-duty capacity.  *Williams*, 211 F. App'x at 330.  First, according to Williams' complaint, Officer Anders did not state his reasons for arresting and assaulting Williams, and the undersigned has already determined that he did not have reasonable suspicion to effectuate the arrest.  Doc. No. 44 at 16, ¶ 42; *R. & R.*, Doc. No. 110 at 15 (holding that because "the court lacks knowledge for the underlying basis motivating Defendant Anders' initial intention to arrest

Williams," "this too lacks either reasonable suspicion or probable cause.") (collecting cases). This first indicia of "capacity" therefore weighs in favor that Officer Anders acted in his private capacity as an off-duty officer. *See Goins*, 2021 WL 2785344, at *4 ("Because LaRue acted pursuant to a reasonable suspicion that Goins was engaged in criminal activity, and there are no allegations that Goins was protecting Sam's property . . . Goins' allegations do not state a plausible vicarious liability claim against Sam for false imprisonment."), *R. & R. adopted*, 2021 WL 2779312 (S.D. Tex. July 2, 2021); *Yadav*, 2020 WL 7385842, at *4 (holding officer acted in public capacity when he arrested the plaintiff for criminal trespass of a bank), *R. & R. adopted*, SA-20-CV-00005-FB-ESC, ECF No. 60 (Order Adopting Report & Recommendation), *aff'd* 851 F. App'x 509 (5th Cir. June 29, 2021).

Second, Williams alleges that Officer Anders "appeared to be wearing loud shorts and a t-shirt" and that "somebody was apparently being told to 'stay' but it was unclear what was being yelled at whom." Doc. No. 44 at 7–8, ¶¶ 30, 32. Accordingly, the second indicia of an officer's "capacity" —whether he identified himself as a police officer—weighs in favor of determining at this stage that Officer Anders acted as a private, off-duty officer. *Mansfield*, 37 S.W.3d at 150 (holding officer was performing his public duty because he "identified himself and showed his badge to Mansfield prior to arresting him"); *Williams*, 211 F. App'x at 330 ("First, Williams knew Officer Riley was a police officer because when Riley arrested him, she was wearing a uniform and badge."); *Cox*, 762 F. Supp. 2d at 939–40 (N.D. Tex. 2010) (officer acted in public capacity when he "was wearing his Forth Worth police officer's uniform.").

Moreover, none of the three circumstances outlined in *Huynh* apply to Williams' operative complaint: Williams' complaint does not state a crime occurred for Officer Anders to observe, did not plead facts giving rise to reasonable suspicion, and did not indicate that Anders detained

her until she could be transported to a police station.  *Huynh*, 30 F.4th at 454.  At this stage, the undersigned therefore determines that Officer Anders allegedly acted in his private capacity as an employee of the Overlook Apartments in the events underlying this action.  The court therefore must recommend denying the Overlook Apartments' *Fourth Motion to Dismiss* (Doc. No. 121) on Williams' vicarious liability claim.  *Cf. Mansfield*, 37 S.W.3d at 150 (emphasis added) (citation omitted) ("If the officer was engaged in protecting the employer's property, ejecting trespassers, or enforcing rules and regulations promulgated by the employer,"—i.e., acting in his private capacity on behalf of the employer—"*the trier of fact* decides whether the officer was acting as a public officer or as a servant of the employer.").

In total, the undersigned recommends granting the Overlook Apartments' *Fourth Motion to Dismiss* (Doc. No. 121) as it pertains to Williams' allegations under 42 U.S.C. § 1983, and as relating to Williams' negligent hiring, retention, training, and supervision claims.  The undersigned, however, recommends denying the instant motion to dismiss as it pertains to Williams' vicarious liability claim, as at this juncture, she has pleaded sufficient facts to infer that Officer Anders acted in his private capacity as an off-duty police officer.

## IV.    <u>Recommendation</u>

For these reasons, the undersigned recommends granting in part and denying in part Defendant Cardinal Street Housing, L.P.'s *Fourth Rule 12(b)(6) Motion to Dismiss Plaintiff's Third Amended Corrected Complaint* (Doc. No. 121).

The court recommends dismissing with prejudice Plaintiff Shannon Williams' claims brought under 42 U.S.C. § 1983 and common law theories of negligent hiring, retention, training

and supervision.  Alternatively, the court recommends denying the instant motion to dismiss as it pertains to Williams' vicarious liability claim.

## V.    **Objections**

Pursuant to 28 U.S.C. § 636(b)(1)(C), each party to this action has the right to file objections to this Report and Recommendation.  Objections to this Report must (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, (3) be served and filed within fourteen (14) days after being served with a copy of this Report, and (4) be no more than eight (8) pages in length.  *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2); E.D. TEX. CIV. R. CV-72(c).  A party who objects to this Report is entitled to a *de novo* determination by the United States District Judge of those proposed findings and recommendations to which a specific objection is timely made. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this Report, within fourteen (14) days of being served with a copy of this Report, bars that party from: (1) entitlement to *de novo* review by the United States District Judge of the findings of fact and conclusions of law, and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States District Judge.  *See Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED this 15th day of June, 2023.

_____
Zack Hawthorn
United States Magistrate Judge

20